IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JULIE ANN GORTNEY, ) | |
| ) | |
| PLAINTIFF, ) | |
| ) | |
| VS. ) | 2:15-cv-776-JHH |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social ) | |
| Security, ) | |
| ) | |
| DEFENDANT. ) | |

## MEMORANDUM OPINION

Plaintiff, Julie Ann Gortney, brings this action pursuant to Section 205(g) of the Social Security Act ("the Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB") under Title XVI. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.   Proceedings Below**

Plaintiff filed her application for a period of disability and DIB on March 27, 2012, alleging a disability onset date of March 1, 2008. (R. 12). Plaintiff had acquired sufficient quarters of coverage to remain insured through March 31, 2014. (R. 12).

On July 11, 2012, Plaintiff's application was denied. (R. 12). On July 26, 2012, Plaintiff requested an administrative hearing (R. 12), which was held before an Administrative Law Judge

("ALJ") on January 2, 2014. (R. 12, 24). Both Plaintiff and Vocational Expert Eddie Rice testified at the hearing. (R. 12).

In the thirteen page February 5, 2014 decision, the ALJ determined that Plaintiff was not eligible for DIB because she was not under a "disability," as defined by the Act, at any time through the date of decision. (R. 24). Thereafter, Plaintiff requested review of the ALJ decision by the Appeals Council. (R. 7). After the Appeals Council denied Plaintiff's request for review on April 8, 2015, (R. 5), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the hearing resulting in an unfavorable decision, Plaintiff was thirty-six years old, which is classified as a "younger individual." (Doc. #12 at 2). Plaintiff's past relevant positions include: waitressing, running machinery producing yarn, staining and varnishing furniture, making cabinets, working at a nursing home, and working at a daycare center. (R. 393-398). Plaintiff's most recent employment was with Golden Rule Barbeque as a waitress. (R. 393). According to Plaintiff, she has been unable to engage in substantial gainful activity since March 1, 2008, when she became unable to work due to: (1) depression; (2) kidney disease; (3) irritable bowel syndrome ("IBS"); (4) migraine headaches; (5) knee, wrist, and back pain; (6) endometriosis; and (7) anxiety attacks. (Doc. # 12 at 2-3).

## II. ALJ Decision

Determination of disability under the Social Security Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working ("Step One"). Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities ("Step Two"). Third, the Commissioner

determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations ("Step Three"). Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work ("Step Four"). The claimant's residual functional capacity consists of what the claimant can do despite his impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work ("Step Five"). In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that he can no longer perform his former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id*.

The ALJ found that Plaintiff last met the insured status requirements of the Act on March 31, 2014, (R. 14, No. 1), and that she did not engage in substantial gainful activity during the period of time from her alleged onset of disability on March 1, 2008, through her date last insured, (R. 14, No. 2). The ALJ found that, during the relevant time period, Plaintiff had the following severe impairments: degenerative joint disease of the bilateral knees, chronic kidney disease, migraine

headaches, status post arthroscopic surgery right knee, insomnia, endometriosis, cervalgalia, and major depressive disorder, moderate. (R.15, No. 3). However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1. (R. 15, No. 4). Thus, the ALJ found that Plaintiff was not under a "disability" at any time during the relevant period. (R. 24, No. 11).

### III.     Plaintiff's Argument for Remand or Reversal

Plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. (Doc. #12, at 1). Plaintiff argues that, for the following reasons, the ALJ's decision is not supported by substantial evidence and improper legal standards were applied: (1) the ALJ's finding that Plaintiff's IBS is a non-severe impairment is not supported by substantial evidence; (2) the ALJ improperly determined Plaintiff's residual functional capacity ("RFC"); and (3) the ALJ improperly discredited the subjective testimony of Plaintiff with respect to her pain and limitations. (Doc. #12 at 10).

### IV.     Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405 (g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the

Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## V. Discussion

Against that backdrop of applicable standards, the court rejects Plaintiff's arguments for remand and/or reversal.

### A. Substantial Evidence Supports the Conclusion that IBS is a Non-Severe Impairment

A severe impairment is one that significantly limits a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 404.1521(a), 416.920(a)(4)(ii), (c). The claimant bears the burden of proving an impairment is a severe impairment. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "A diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment of her ability to work." *Wind v. Barnhart*, 133 Fed. Appx. 684,

690 (11th Cir. 2005) (quoting *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)). The relevant question is the extent to which the impairment limits the ability to work. *See Moore*, 405 F.3d at 1213, n. 6.

Here, Plaintiff argues that the ALJ's finding that her irritable bowel syndrome ("IBS") is not severe is not supported by substantial evidence. (Doc. #12 at 11-13).

> The ALJ noted that Dr. Howard only added irritable bowel syndrome as a diagnosis in June 2013. However, a careful review of the medical evidence of record reveals that on February 15, 2008, Dr. Howard assessed Plaintiff as having "abdominal cramping, probably irritable bowel syndrome." (Doc. #12 at 11-12, *citing* TR. 300). The IBS diagnosis is also referenced on the office visits of October 7, 2008, July 9, 2009, March 24, 2010, and February 26, 2013. (*Id.* at 12, *citing* TR. 298, 294, 292, 290, 347).

Plaintiff argues that her testimony during the hearing explains the severity of the syndrome: not being able to "hold it;" having to go to the bathroom "out of the blue;" not venturing out of the house for fear of soiling herself; not wanting to carry around a diaper bag. (Doc. #12 at 12; R. 414-15). The ALJ considered this testimony and recognized that Plaintiff testified that her IBS keeps her from going out much. (R.18).

However, despite these allegations, Plaintiff's medical record belies her testimony. Medical records are devoid of any notes mentioning complaints of diarrhea after March 1, 2008 (the onset date of disability) and the diagnosis of IBS alone cannot support a finding of a severe impairment. *See* 20 C.F.R. § 404.1529(a), (b), 416.929(a), (b). There is scant medical evidence to support a finding that IBS interfered with Plaintiff's ability to perform basic work activities. *See* 20 C.F.R. § 404.1520(c), 404.1529(c)(2)-(4), 416.920(c), 416.929(c)-(4). Plaintiff did complain of abdominal pain on some occasions, (R.299, 312-14, 337, 344, 348, 350), but Plaintiff did not mention bowel incontinence. (R.168, 299-300). Later, Dr. Howard opined that Plaintiff's abdominal cramping

6

might be due to an ovarian cyst or "secondary to IBS with ovarian pelvic congestion." (R.348, 351). Plaintiff denied diarrhea at later medical appointments. (R.293, 296, 300, 302). Other than a few references to abdominal tenderness, (R.313-14, 339), there were no abnormal clinical findings related to Plaintiff's GI system after March 2008. (R.289, 291, 293, 297, 300, 317-18, 321, 325-26, 337, 344-45, 348, 350, 377). Plaintiff's lack of treatment for IBS also supports the ALJ's finding that IBS was not a severe impairment. (R.15, 237-382).

Because the medical evidence provides substantial evidence that Plaintiff's IBS was not a severe impairment, this ground for reversal of the ALJ's decision is due to be denied.

### B.    The ALJ Properly Assessed Plaintiff's RFC

Next, Plaintiff argues that the ALJ's RFC finding that she can perform a restricted range of light work is not supported by substantial evidence or any medical opinion. (Doc. #12 at 13-17). Despite Plaintiff's arguments, a review of the ALJ's process of determining Plaintiff's RFC reveals that substantial evidence supports his conclusions and proper legal standards were applied in his analysis.

As a threshold matter, it is important to note that although an ALJ can consider opinions from acceptable medical sources when calculating a claimant's RFC, "the final responsibility for deciding [those] issues is reserved for the Commissioner." 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2006); see SSR 96-5p, 61 Fed. Reg. 34471 (1996). Indeed, opinions on issues such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors, are not medical opinions, "but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; *i.e.* that would direct the determination or decision of

disability." 20 C.F.R. § 404.1527(e). Requiring an ALJ's RFC finding to be based on the opinion of a doctor "would, in effect, confer upon the [doctor] the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p; *see* 42 U.S.C. § 405(a).

In this case, the ALJ's RFC calculated that Plaintiff can perform light work despite certain limitations. (R.17). Plaintiff does not attempt to point to any evidence, other than her own testimony, that supports a more limited RFC finding. (Doc. #12 at 13-17) ("In the present case, one of Plaintiff's primary reasons for being unable to work is the chronic pain she experiences. ... There is no explanation at all as to how Plaintiff's pain could affect her ability to work.") In fact, Plaintiff's own testimony shaped the ALJ's finding. Plaintiff stated that she is capable of lifting 10 pounds and could walk for 10 or 15 minutes before needing to rest. (R.196, 408). This is consistent with the ALJ's finding that she needed a sit/stand option and could walk short distances of up to 100 yards or 15 minutes at a time. (R.17). Plaintiff reported her daily routine consisted of waking up her children and feeding them, showering, cleaning, visiting her mother, watching television, taking her children outside to play, playing with them, and making sure the children are fed and put to bed. (R.191, 195). Plaintiff denied any difficulty with personal care activities, and she reported being able to prepare simple meals, drive, shop, clean, wash laundry, and vacuum. (R.192-94). This is wholly consistent with the ALJ's RFC finding. (R.17).

In addition, Plaintiff's treatment notes fail to demonstrate limitations in excess of those included in the ALJ's RFC finding. On October 7, 2009, July 9, 2009, and March 24, 2010, Plaintiff denied musculoskeletal or extremity pain, and Dr. Howard's findings were normal. (R.291, 293,

296-97). On May 1, 2011, Plaintiff presented to the emergency room with complaints of upper back or shoulder pain that began two days earlier. (R.320). Providers noted that she was in no acute distress and was independent with activities of daily living. (R.322). The only abnormal examination findings were limited range of motion of the neck and muscle spasm. (R.321). There was full range of motion in Plaintiff's extremities, and motor and sensation examinations were normal. (R.321). On November 27, 2012, Plaintiff reported to Dr. Howard that she experienced neck and shoulder pain, but she was in no acute distress. (R.344). Musculoskeletal and neurological examination findings were normal, including full range of motion in the neck and no musculoskeletal tenderness. (R.344-45). On February 26, 2013 Plaintiff reported that she took hydrocodone intermittently, and musculoskeletal findings were normal. (R. 348). An examination on May 28, 2013 revealed Plaintiff was in no acute distress, had a full range of motion in the neck, no muscle tenderness, and musculoskeletal and neurological findings were normal. (R.350-51). These findings are wholly consistent with the ALJ's RFC finding.

The consultative examination performed by David L. Gordon also supports the ALJ's RFC finding. Dr. Gordon found some tenderness of the right knee, but there was no swelling, atrophy, or crepitus on range of motion of either knee. (R.339). Dr. Gordon noted full strength on flexion and extension of the hips and knees and full grip strength. (R.339). Straight leg raise testing was negative, neurological testing was normal, and Plaintiff's range of motion was normal in all joints except for a 20% reduction in right knee flexion. (R.339-41). Dr. Gordon remarked that Plaintiff had no problems sitting, standing, or walking in the hallway, had normal finger dexterity, complained of right knee pain while walking, and could toe and heel walk and squat and rise 50%. (R.339).

This court is well-aware of its function as a reviewing court in this case. The Eleventh Circuit has made clear that the weighing of evidence is a function of the ALJ – not the district court. *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986). Indeed, even if the evidence preponderates against the ALJ's factual findings, this court must affirm the ALJ if his decision is supported by substantial evidence. *Ingram v. Astrue*, 496 F.3d 1253, 1260 (11th Cir. 2007). In this case, it is. Because the medical evidence simply does not support a finding that Plaintiff's conditions caused disabling limitations that preclude work at any level of exertion, this court finds that the ALJ's RFC assessment, and ultimately his finding that Plaintiff is not disabled, are supported by substantial evidence.

    **C.    The ALJ Properly Discredited the Subjective Testimony of Plaintiff with Respect to her Pain and Limitations**

It is axiomatic that the Act and its related regulations provide that a claimant's statements about pain or other symptoms *will not alone* establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929. Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). When, as here, a claimant alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and *either* (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, *or* (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain. *See* 20 C.F.R. § 404.1529; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *Holt*, 921 F.2d at 1223; *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

If the ALJ fails to credit a claimant's pain testimony, he must articulate reasons for that decision. 42 U.S.C. § 423(d)(5)(A).

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a claimant actually possesses. Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain. *See* 20 C.F.R. § 416.929(b) (2006); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a claimant's subjective testimony of pain if [the pain standard is met]."). After considering a claimant's complaints of pain, an ALJ may then "reject them as not creditable." *Marbury*, 957 F.2d at 839. Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was properly applied, *Holt*, 921 F.2d at 1223, the Eleventh Circuit has held that an ALJ's reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the ALJ properly applied the pain standard. *Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

In this case, the ALJ's analysis comports with the requirements of the pain standard for evaluating Plaintiff's subjective complaints, indicating that proper legal standards were applied in her analysis and that he considered Plaintiff's symptoms and subjective complaints in light of the steps outlined above. The ALJ reached her conclusions after a thorough review of the opinions of Plaintiff's treating and examining sources, which support the ultimate determination. *See* C.F.R. § 404.1529(c)(2).

Although the ALJ determined that the objective evidence establishes some medically

determinable impairments that could produce Plaintiff's alleged symptoms, (R. 15), he nevertheless found that Plaintiff's statements about the intensity, persistence and limiting effects of those impairments are not entirely credible. (R. 18-19). In so finding, the ALJ discussed Plaintiff's activities of daily living (Exhibits SE, 6E, 6F) and properly took into account the opinion of Dr. Howard. Despite Plaintiff's assertions, Dr. Howard's clinical findings, treatment records, and diagnoses do not reflect judgments about the nature and severity of Plaintiff's impairments or what she could still do despite her impairments. (R.321-31, 336-59, 432-65, 533-35). In fact Plaintiff does not identify which of Dr. Howard's opinions she contends that the ALJ discounted. (Doc. #12 at 20-21). Therefore, there was no medical opinion for the ALJ to weigh and nothing for the ALJ to "accept as true." *See* 20 C.F.R. § 404.1527(b)-(c).

In conclusion, the court finds that the ALJ did not err in discrediting Plaintiff's subjective complaints. Given the record as a whole, substantial evidence supports the ALJ's determination that Plaintiff's allegations of disabling limitations were not entirely credible. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(I); 20 C.F.R. §§ 404.1512(a), (c), 404.1529(a); *Ellison*, 355 F.3d at 1276.

## VI. Conclusion

For all of these reasons, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** this the __2nd__ day of May, 2016.

_____
SENIOR UNITED STATES DISTRICT JUDGE